UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| ANOTHER HOUSING COMPANY, LLC | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 2:21 CV 00885 |
| DOWNTOWN KENOSHA DEVELOPMENT, LLC, BLUEPRINT DEVELOPMENT, LLC, WOLF REAL ESTATE PARTNERSHIP, LP, DAVID WALLACH and STEVE WOLF, | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Another Housing Company, LLC, by and through its undersigned attorneys, hereby brings this action against Defendants Downtown Kenosha Development, LLC, BluePaint Development, LLC, Wolf Real Estate Partnership, LP, David Wallach and Steve Wolf (collectively, the "Defendants"), and alleges as follows:

## PARTIES

1. Another Housing Company, LLC (hereinafter "AHC") is a limited liability company with its principal place of business located at 95 West Lake Shore Drive, Rockaway, New Jersey 07866.

2. Defendant Downtown Kenosha Development, LLC (hereinafter "DK") is a Wisconsin limited liability company with its principal place of business located at 6320 20th Avenue, Kenosha, WI 53143. The three members of DK are AHC and Defendants BluePaint and

WRE (collectively, the "DK Members"). DK is in the business of developing commercial, residential and/or retail projects.

3. Defendant BluePaint Development, LLC (hereinafter "BluePaint") is an Illinois limited liability company, with its principal place of business located at 6320 20th Avenue, Kenosha, Wisconsin 53143. BluePaint is private company which claims to be involved in the development of multi-family housing, single family residences, hospitality properties, and senior care facilities.

4. Defendant Wolf Real Estate Partnership, LP (hereinafter "WRE") is a Delaware limited partnership with its principal place of business located at 1891 Mission Hills Lane, Northbrook, Illinois 60062. WRE is privately held real estate development company. Upon information and belief, WRE has a designated office at 1000 W. Washington Boulevard, Suite 215, Chicago, Illinois 60607.

5. Upon information and belief, Defendant David Wallach (hereinafter "Wallach") is an adult with a place of residence at 8609 Lakeshore Drive, Pleasant Prairie, Wisconsin 53158. Upon further information and belief, Wallach is the managing Member of Defendant BluePaint.

6. Upon information and belief, Defendant Steve Wolf (hereinafter "Wolf") is an adult with a place of residence at 1891 Mission Hills Lane, Northbrook, Illinois 60602. Upon further information and belief, Wolf is the owner of WRE.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000 and there is complete diversity in citizenship between Plaintiff and Defendants, individually and collectively.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b)(2), as Defendants are corporations and individuals that are subject to personal jurisdiction in the Eastern

District of Wisconsin as a substantial part of the events giving rise to Plaintiff's claims arose in this district.

9. Venue in this judicial district is further proper pursuant to 28 U.S.C. § 1391(b)(3), as there is no district in which this action may otherwise be brought and this Court has personal jurisdiction over Defendant Downtown Kenosha Development, LLC, as it is a limited liability company formed and existing under the laws of the State of Wisconsin with a principal place of business in the judicial district and over David Wallach as he personally resides in the judicial district.

**STATEMENT OF FACTS**

10. On or about August 8, 2019, the DK Members entered into an Operating Agreement to address the rights and obligations of the DK Members and to govern the operation of DK (the "DK Operating Agreement"), and related agreements.

11. The DK Members established DK for the purposes of "developing commercial/retail projects and mixed used and multi-family residential developments, including but not limited to apartments, condominiums, hotels, assisted living facilities, dormitories and the like."

12. One particular project that DK was pursuing at the time AHC became a member was the development of the Downtown Kenosha Project (the "Project"), a joint venture real estate project to develop the Alford Building "either as a mixed use residential/retail building or as a retail/office wellness center."

13. Pursuant to Section 4.01 of the DK Operating Agreement, Wallach serves as the sole manager of DK.

14. AHC's intended capital contribution to DK was $200,000, which contribution is defined in the DK Operating Agreement as the "Capital Contribution."

15. In August 2019, AHC wired $100,000 into DK's bank account as payment of a portion of the Capital Contribution.

16. Pursuant to Section 6.04 of DK's Operating Agreement, Wallach was responsible for providing the Members of DK, "within 60 days from the date of this Agreement[,] documentation concerning the Company's proposed development ventures, including loan commitments, wetland and environmental reports and zoning approvals".

17. Section 6.04 of the DK Operating Agreement also provides AHC with the right to opt out of the Project under the following circumstances:

> If BluePaint is unable to obtain such documentation within such period, then BluePaint shall notify AHC . . . of such inability and specify a new deadline for delivery of such documentation, such deadline not to be later than 60 days beyond the initial date of required delivery. After receiving the documentation AHC and IBM shall have the option . . . provide notice of AHC and IBM's withdrawal from this Agreement. If AHC . . . elect[s] to withdraw from this Agreement, then the Company shall immediately refund to AHC it's [sic] entire Initial Capital Contribution and AHC . . . shall transfer their Membership Interests as directed by the Company.

18. Pursuant to Section 6.04 of the Project's Operating Agreement, Wallach, as the manager of DK, retained a duty to provide AHC and the other DK Members with pertinent information to review and analyze for purposes of determining their willingness to proceed with the Project.

19. Pursuant to Section 5.02 of the DK Operating Agreement, the DK Members retain rights to indemnification for "reasonable costs and expenses (including, without limitation, attorneys' fees) actually incurred."

A. **Defendants' Breach of the DK Operating Agreement.**

20. Neither BluePaint nor Wallach provided AHC with the documents required by Section 6.04 of the DK Operating Agreement within the time period set forth therein, nor did either

request an extension of the deadline for doing so.

21. AHC made several requests, orally and in writing, of BluePaint and Wallach to provide information related to the Project, as required by Section 6.04 of the DK Operating Agreement.

22. BluePaint and Wallach failed to comply with any of AHC's requests for information regarding the Project, despite the requirements of Section 6.04 of the DK Operating Agreement.

B. **Defendants' Breach of the September 20th Agreement.**

23. Due to the conflicts among the Members relating to AHC's requests for information, on September 20, 2019, AHC and Wallach, as the manager of DK, reached an agreement regarding AHC's complaints that it had not been provided information regarding DK (the "Supplemental Agreement").

24. Pursuant to the Supplemental Agreement, Wallach agreed to extend the time for AHC to review DK's contracts and attendant materials.

25. The Supplemental Agreement required that AHC contribute an additional $25,000 towards its $200,000 capital contribution requirement (bringing its total paid-in capital to $125,000).

26. The Supplemental Agreement provides that "in consideration for the $25,000.00 [additional capital contribution], should [AHC] determine it is not in their best interest to proceed with the Downtown Kenosha project, [Defendants] have agreed to refund them their full investments to date[.]"

27. The Supplemental Agreement provides that if AHC exercises its right to request a refund of its paid-in Capital Contribution, such money shall be returned to it within 45 days.

28. The Supplemental Agreement provides that Defendants shall pay "interest (up to 18% monthly) on the $125,000.00 total amount, should the monies not be returned [to AHC] within the [forty-five]-day notice period."

29. On September 20, 2019, AHC wired to DK's bank account an additional $25,000 capital contribution, pursuant to the terms of the Supplemental Agreement.

30. On September 26, 2019, following preliminary review by legal counsel, AHC's counsel sent correspondence to DK identifying fifteen issues concerning the DK Operating Agreement and related documents, and explaining that AHC was not comfortable with moving forward as a member of DK unless those issues were addressed. AHC also requested the consent of all of DK's members to share in the expense of modifying the DK Operating Agreement and related documents to address its concerns.

31. Wallach responded to AHC's counsel's letter of September 26, 2019, later on the same date, and declined AHC's request that he and the other DK members share the cost of amending the DK Operating Agreement and related documents.

32. On September 27, 2019, AHC, through its legal counsel, sent correspondence to the Defendants invoking its right to decline to proceed with the Project, through a membership interest in DK, pursuant to the Supplemental Agreement. Accordingly, that correspondence triggered the 45-day deadline for the Defendants to return to AHC its $125,000 Capital Contribution, the deadline for which was November 11, 2019.

33. On September 29, 2019, Wallach advised that he would review and consider any proposals to amend the relevant documents but would not agree to share in the related expense.

34. Between September 29, 2019, and November 8, 2019, the Parties engaged in good-faith negotiations concerning AHC's interest in redrafting the DK Operating Agreement and the

attendant contracts. Over this period, AHC also made several requests to the Defendants for information concerning the Project.

35. Between September 29, 2019, and November 8, 2019, the Defendants refused to provide AHC with the requested information, contending that AHC would not be entitled to the requested information unless or until it paid an additional $75,000 in contribution. To date, the Defendants have not provided a contractual basis for denying AHC its many requests for information.

36. As a result of the Defendants' continued refusal to provide information, on November 8, 2019, AHC, through counsel, sent BluePaint/Wallach correspondence demanding the refund of its capital contributions and confirmation of Wallach's intent to do so, and extending the payment deadline to November 14, 2019.

37. On or about November 18, 2019, Plaintiff, through counsel, sent correspondence to BluePaint/Wallach pursuant to the Supplemental Agreement, demanding that AHC be returned its full $125,000 capital contribution.

## FIRST COUNT
### (Breach of Contract—DK Operating Agreement)

38. AHC repeats and realleges the preceding paragraphs 1 through 37 as though fully set forth herein.

39. AHC and the Defendants entered into the DK Operating Agreement, which is a valid, binding, and enforceable contract.

40. AHC has performed, and continues to perform, all of its obligations required by the DK Operating Agreement.

41. The Defendants have failed to perform and comply with their contractual obligations due and owing to AHC under the DK Operating Agreement.

42. The Defendants have breached the DK Operating Agreement by failing to provide required documentation, pursuant to Section 6.04.

43. The Defendants have breached the DK Operating Agreement by failing to return to AHC its capital contributions.

44. As a direct and proximate result of the Defendants' breach of the DK Operating Agreement, AHC has suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants for the following relief:

    A.    Compensatory damages;

    B.    Interest, attorney's fees, and costs of suit; and

    C.    Such other relief as this Court deems just and equitable.

## SECOND COUNT
### (Breach of Contract—Supplemental Agreement)

45. AHC repeats and realleges the preceding paragraphs 1 through 44 as though fully set forth herein.

46. AHC and the Defendants entered into the Supplemental Agreement, which is a valid, binding, and enforceable contract.

47. AHC has performed, and continues to perform, all of its obligations required by the Supplemental Agreement.

48. The Defendants have failed to perform and comply with their contractual obligations due and owing to AHC under the DK Supplemental Agreement.

49. The Defendants have breached the Supplemental Agreement by failing to return to AHC its $125,000 capital contribution and failing to pay 18% interest thereon.

50. As a direct and proximate result of the Defendants' breach of the Supplemental Agreement, AHC has suffered damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants for the following relief:

    A.    Compensatory damages;

    B.    Interest, attorney's fees, and costs of suit; and

    C.    Such other relief as this Court deems just and equitable.

### THIRD COUNT
### (Conversion)

51. AHC repeats and realleges the preceding paragraphs 1 through 50 as though fully set forth herein.

52. The Defendants have retained possession AHC's $125,000 capital contribution, despite AHC's proper demand for the return of those monies.

53. Upon information and belief, DK, at Wallach's direction, has transferred some or all of AHC's capital contribution to third parties, with some transfers even taking place after AHC's reimbursement demand.

54. Wallach, and/or BluePaint have improperly exercised dominion and control over AHC's property.

55. DK and Wallach have deprived AHC from the use of the funds represented by its capital contribution.

56. DK intentionally took control of Plaintiff's monies without providing the appropriate documents and accounting, without AHC's consent, resulting in serious interference with the AHC's possessory rights to its monies.

57. AHC is entitled to immediate possession of its monies over which Defendants have wrongfully retained dominion or control.

58. As a result of the aforementioned acts committed by the Defendants, AHC has suffered substantial harm and damages.

WHEREFORE, Plaintiff demands judgment against defendants Downtown Kenosha and Wallach for the following relief:

    A.    Compensatory damages;

    B.    Punitive damages;

    C.    Interest, attorney's fees, and costs of suit; and

    D.    Such other relief as this Court deems just and equitable.

## FOURTH COUNT
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

59. AHC repeats and realleges the preceding paragraphs 1 through 58 as though fully set forth herein.

60. The Supplemental Agreement constitutes a valid contract under New Jersey Law.

61. The DK Operating Agreement contains an implied covenant of good faith and fair dealing, such that each party owes the other a duty to act fairly and in good faith.

62. The Supplemental Agreement contains an implied covenant of good faith and fair dealing, such that each party owes the other a duty to act fairly and in good faith.

63. AHC made its Capital Contribution to DK with the understanding that the money would be held for purposes of meeting project fundraising goals, and would only be drawn down on when construction began on the Project.

64. Upon information and belief, Defendants have been spending and continue to spend AHC's Capital Contribution, even after AHC properly invoked its right to have its money returned.

65. Defendants have represented to AHC that its Capital Contribution is needed for purposes of courting investment from additional sources. Thus, Defendants have been conferred a benefit by wrongfully withholding AHC's Capital Contribution.

66. Defendants have breached their duty of good faith and fair dealing owed to AHC, and did so with bad motive and intention, as reflected by their constant refusal to provide requested information to which Plaintiff is entitled, refusal to allow AHC to exercise its rights under the Operating Agreement to decline to move forward with the Project, and refusal to return AHC's $125,000 Capital Contribution under the Supplemental Agreement.

67. Defendants have failed, and continues to fail, to engage with AHC truthfully and accurately, and have declined unlawfully to return AHC's Capital Contribution.

68. By reason of these breaches, AHC has incurred damages in an amount to be determined at trial.

69. The Defendants have thus been unjustly enriched at AHC's expense, and AHC is entitled to be compensated for the benefit it has conferred upon the Defendants in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants for the following relief:

A. Compensatory damages;

B. Punitive damages;

C. Interest, attorney's fees, and costs of suit; and

D. Such other relief as this Court deems just and equitable.

## FIFTH COUNT
### (Unjust Enrichment – Pled in the Alternative)

70. AHC repeats and realleges the preceding paragraphs 1 through 69 as though fully set forth herein.

71. As set forth above, AHC properly demanded the return of its initial capitalization of the Project from the Defendants.

72. The Defendants have wrongfully retained, and has refused to remit, the initial capital payment made to the Project by AHC.

73. The Defendants have received the benefit of $100,000 provided by AHC under the DK Operating Agreement and $25,000 provided by AHC under the Supplemental Agreement.

74. The retention of such benefits by Defendants would be unjust.

75. The Defendants have thus been unjustly enriched at AHC's expense, and AHC is entitled to be compensated for the benefit it has conferred upon the Defendants in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants for the following relief:

A. Compensatory damages;

B. Punitive damages;

C. Interest, attorney's fees, and costs of suit; and

D. Such other relief as this Court deems just and equitable.

## SIXTH COUNT
**(Fraudulent Inducement)**

76. AHC hereby repeats and realleges the allegations contained in paragraphs 1 through 75 as though fully set forth herein.

77. The parties' Agreement and Supplemental Agreements require that AHC's capital contributions in the amount of $125,000 be returned to AHC.

78. Despite AHC's demands for the return of its capital contributions, DK and Wallach have failed to make any payments to AHC.

79. Upon information and belief, AHC's capital contributions in the amount of $125,000 have, in whole or in part, been disbursed by DK and/or Wallach.

80. AHC is entitled to an accounting of the financial transactions by DK and/or Wallach that represent the use of monies transferred by AHC to DK.

81. AHC has requested an accounting from DK and Wallach.

82. Prior to entering into the Agreement and/or Supplemental Agreement, Defendants represented to AHC that they would be able to review documents to make a determination about proceeding with the Project.

83. Prior to entering into the Agreement and/or Supplemental Agreement, Defendants represented to AHC that they would be able to opt out of the Project if, upon review of financing and accounting records, AHC was not comfortable with proceeding with the Project.

84. Defendants knowingly made statements to AHC that were untrue concerning AHC's ability to request accountings of the Project and review Project records for purposes of determining whether to proceed with or opt-out of the Project.

85. Defendants, knowing their statements regarding the Project and AHC's ability to assess the financial viability of the Project were untrue, callously and recklessly ignored the fact that their statements to AHC were true.

86. Defendants, in making their statements to AHC regarding financing of the Project, acted with the intent to defraud and to induce AHC to act upon their statement by requiring AHC to make capital contributions to the Project in order to obtain AHC's requested accounting information.

87. AHC believed Defendants' statements and relied on them to AHC's detriment.

88. Defendants' misrepresentations occurred before AHC and Defendants entered into the Agreement and/or the Supplemental Agreement.

89. DK and Wallach have refused and failed to provide any accounting information or to return to AHC its capital contributions to the Project.

**WHEREFORE**, Plaintiff demands judgment against defendants Downtown Kenosha, LLC and David Wallach including the following relief:

 A. Directing said defendants to perform and provide an accounting as to the use and whereabouts of plaintiff's capital contributions of $125,000;

 B. Attorneys' fees and costs; and

 C. Such other relief as this Court deems just and equitable.

## JURY TRIAL DEMANDED

Plaintiff here makes demand for a jury trial on all counts.

          DAWKINS & WARRINGTON LAW GROUP LLC
          *Attorneys for Plaintiff*


          By: */s/ Clifford D. Dawkins, Jr.*
             Clifford D. Dawkins, Jr., Esq.
             239 New Road, Suite B205
             Parsippany, NJ 07054
             (201) 919-5458
             Cliff@DawkinsWarrington.com

Dated: July 28, 2021